914 F.2d 1490
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re Jack R. BLACK, Jr.
In re Cathy T. BLACK, Debtors.
Wilbur R. PLEASANTS; Shirley P. Pleasants, Plaintiffs-Appellees,
v.
Jack R. BLACK, Jr., Defendant-Appellant.
 No. 90-2620.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1990.
Decided Sept. 25, 1990.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CA-89-698-R).
 Jonathan Mitcalfe Apgar, Willis, Damico & Apgar, Roanoke, Va., argued, for appellant.
 John Robert Patterson, Roanoke, Va., argued for appellees.
 W.D.Va.
 AFFIRMED.
 Before WIDENER and SPROUSE, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 The defendant, Jack R. Black, Jr., appeals from the district court's judgment that Black owed a nondischargeable debt to plaintiffs, Wilbur and Shirley Pleasants. The Pleasants sued Black in bankruptcy court, alleging that he had misappropriated funds paid to him to build their house. Finding no actual fraud on the part of Black, the bankruptcy court discharged the debt, pursuant to the dictates of the bankruptcy code. The district court reversed, holding that the bankruptcy court had made clearly erroneous findings of fact, as well as an erroneous legal determination in reaching its decision. We affirm the district court judgment.
 
 
 2
 * In January 1986, the parties entered into a contract to have defendant build their new house. Although Black had never built an entire house before, the Pleasants hired him because they had been pleased with work he had previously done for them. The Pleasants expressed some concern about Black's financial security, as they had nearly lost a previous house when a builder they hired declared bankruptcy. Black assured them that he would not declare bankruptcy and that he had a house, insurance and bond which would protect them.
 
 
 3
 Pursuant to the contract, the Pleasants paid Black in large installments. Black required and received a prepayment of $20,465 before he started construction, representing that he would use the money to obtain better prices on material for the Pleasants' house. Instead, Black deposited the check in his personal account and used much of the first payment to pay personal bills in order to escape bankruptcy. This pattern continued. Of approximately $81,000 the Pleasants paid to Black, he spent $32,815.52 on personal bills and labor and materials not connected to the construction of plaintiffs' house. During the summer of 1986, disagreement arose between the parties. The Pleasants complained that Black's work had been slow and substandard. Black, on the other hand, alleged that the Pleasants interfered with his work and continuously made changes in the building plans. In August 1986, Black ceased working on the house, which had been only half completed. After numerous unsuccessful efforts to contact Black, the Pleasants hired another contractor to finish the house, at a cost of $85,000. Meanwhile, in June 1988, Black filed a Chapter 7 bankruptcy petition. Shortly after, the Pleasants brought suit in bankruptcy court, petitioning the court to grant them a liquidated judgment of $85,000 and to declare the debt nondischargeable.
 
 II
 
 4
 The Pleasants contend that Black's debt falls within two statutory exceptions to the discharge provisions of the bankruptcy code: debt procured through "actual fraud" and, thus, nondischargeable, 11 U.S.C. Sec. 523(a)(2)(A), and debt procured through "fraud ... while acting in a fiduciary capacity, embezzlement, or larceny" and, thus, nondischargeable, 11 U.S.C. Sec. 523(a)(4). The bankruptcy court, however, concluded that Black's use of money paid to him by the Pleasants for purposes other than the construction of their house did not constitute "actual fraud." It found Black to be a "small-time, unsophisticated contractor" who "got in over his head." Similarly, the bankruptcy court held that Black had not acted as a fiduciary, had not embezzled the money, and had not committed larceny. Consequently, the court ordered the debt discharged.
 
 
 5
 On appeal, the district court reversed, holding that many of the factual findings made by the bankruptcy court were clearly erroneous. The district court found that Black made several misrepresentations in obtaining money from the Pleasants and, thus, committed actual fraud as contemplated by Sec. 523(a)(2)(A). The district court also held that the bankruptcy court had made an erroneous legal determination in finding that Black had not committed embezzlement under Sec. 523(a)(4). Accordingly, it held that the $32,815.52 spent by Black not in the construction of the Pleasants' house was a nondischargeable debt.
 
 III
 
 6
 Our task on appeal is quite narrow. We must undertake an independent review of the record to determine whether the factual findings made by the bankruptcy court were "clearly erroneous." Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986) (appellate court independently reviews bankruptcy court decision). It is well-settled that a factual finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). After a review of the record, we agree for the reasons stated by the district court that the bankruptcy court's findings of fact were clearly erroneous. Because we affirm the district court's clearly erroneous determination, we need not reach the legal issue of whether Black's conduct amounted to embezzlement.
 
 
 7
 In view of above, the judgment of the district court is affirmed.
 
 AFFIRMED